May 5, 2015. This assignment was signed by Rolanda Wagner.

32. On May 28, 2014 a Corrected Assignment of Deed of Trust was filed with the Philadelphia Recorder's Office as ins#2014.52785918 signed by Rene A. Ponzio. Certifying Officer for MERS without disclosure of his employment with the Assignee, Ocwen Home Loan Servicing.

33. Shortly after the foreclosure sale but prior to recording the foreclosure deed, on June 12, 2015 the property on 604 Avon St., Philadelphia, Pa. 19116 caught fire and Nayna Brahmbhatt, age 45, sister of Anil J. Brahmbhatt died of smoke inhalation. Then after on July 22, 2015 Lilaben J. Brahmbhatt, age 77, mother, died of 2nd, 3rd, degree burns. Ocwen Loan Servicing which had forced placed insurance on subject property has not yet settled for the death of Lilaben J. Brahmbhatt.

34. Assignment with Deed was filed with the Philadelphia Recorder's Office nearly six years after the Closing Date of the Trust.

35. On May 5, 2015 a Foreclosure sale was consummated in Philadelphia County, State of Pennsylvania . Deutsche Bank National Trust Company did not have standing to foreclose due to a break in the chain of title as documented in the Certified Forensic Loan Auditors report dated Nov. 2, 2016 (Exhibit A). In addition, the subsequent assignments are void as there is no assignment to Ocwen.

36. Plaintiff alleges that only the Depositor, Greenwich Capital Acceptance, Inc.., is the rightful party that can convey the asset into the trust pursuant to investor offering documents as filed with the Securities and Exchange Commission.

## PROPERTY

37. The Real Property description which is the subject of this suit is commonly known as 604 Avon Street, Philadelphia, PA. 19115.

## FIRST CAUSE OF ACTION:
## LACK OF STANDING/WRONGFUL FORECLOSURE, WRONGFUL FORECLOSURE

A.　　**No Defendant Has Standing to Foreclose**

38. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

39. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have an equitable right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Real Property collateral, or cannot prove to the court they have a valid interest as a real party in interest to the underlying Deed of Trust. Thus, the purported power of sale, or power to foreclose non-judicially, by the above specified Defendants, and each of them, no longer applies. Plaintiff was wrongfully foreclosed on May 5, 2015

Philadelphia County, Pennsylvania.

40. Plaintiff requests that this Court find that the purported power of sale contained in the Deed of Trust is a nullity by operation of law, because Defendants' actions in the processing, handling and attempted foreclosure of this §1031 - Exchange involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Plaintiff further requests that title to the Real Property remain in Plaintiff's possession during the pendency of this litigation, and deem that any attempted sale of the Real Property is "unlawful and void".

B.     **Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage**

41. Since the creation of Defendant's Deed of Trust, Defendant MERS was named the "nominee beneficiary" of the Mortgage/Deed of Trust.

42. Plaintiff is informed and believes, and thereon alleges, that Defendant MERS lacks the authority under its corporate charter to foreclose a mortgage/deed of trust, or to own or transfer an interest in a Tangible Note debt obligation because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of Payment Intangible Chattel Paper Transferable Records as the underlying collateral to the Tangible Note for Accommodation Bill of Exchange.

43. Plaintiff is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have legal capacity as interested party and standing.

44. The Tangible Note in this action identifies the entity to whom it accommodated, the Originator. Therefore, the Tangible Note herein cannot be transferred in an ordinary course of business; the attachments to the notice of default do not establish that indorsements were made, nor are there any other notices which establish that Tangible Note negotiation was executed in an ordinary course of business, nor are there any other notices which establish that the Originator sold the Tangible Note to another party for full value.

45. Furthermore, insofar as the parties to the §1031 - Exchange of Defendant's purported transfer off enforcement contract rights over the underlying Mortgage/Deed of Trust base their claim that the Tangible Note and underlying Security was negotiated by operation of law in an ordinary course of business to Defendant HMLT-2007-2, the Trustee of the § 1031 - Exchange herein, by the Originator, it is well established State law that the assignment of a Mortgage/Deed of Trust does not automatically assign the Tangible Note nor the underlying Payment Intangible Transferrable Record as the security interest is incident of the Tangible Note debt obligation.

46. Pursuant to State law, one must be able to prove their capacity of holder of the Tangible Note as one with rights acquired in an ordinary course of business in order to perfect the transfer of enforcement contract rights to the Mortgage/Deed of Trust instrument as collateral for a Tangible Note debt obligation. Without proper negotiation and physical

transfer, the "true sale" of the Tangible Note is invalid as a fraudulent conveyance, or as an unsecured Tangible Note stripped of the Real Property collateral.

47. Defendants MERS has failed to submit documents authorizing MERS, as nominee beneficiary for the Originator, to assign the subject Mortgage/Deed of Trust to the Special Purpose Vehicle trustee. Hence, MERS lacked authority as mere nominee beneficiary to assign Plaintiff's Mortgage/Deed of Trust, making any assignment from MERS defective.

48. Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law. Therefore, Defendant MERS cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in Real Property, and cannot recover anything from Defendants' with unclean hands.

49. Defendants, and each of them, through the actions alleged above, claim the right to illegally commence foreclosure sale of Plaintiff's Real Property under the Mortgage/Deed of Trust on the Real Property via an *in Rem* action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that Real Property is unique.

50. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home which was foreclosed on May 5, 2015 and is now seeking damages as property has been sold to a third party.

51. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because Real Property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION
## FRAUD IN THE CONCEALMENT

### (Against Defendant Deutsche Bank National Trust Company)

52. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

53. Generally, one must prove the following to bring a legally sufficient claim of Fraudulent Concealment:

    a. Concealed or suppressed a material fact;

    b. Had knowledge of this material fact;

    c. That this material fact was not within reasonably diligent attention, observation, and judgment of the Plaintiff;

    d. That the Defendant suppressed or concealed this fact with the intention that Plaintiff be misled as to the true condition of the property; and

     e.   That Plaintiff was reasonably so misled; and

     f.   That Plaintiff suffered damage as a result.

54.  Defendant Deutsche Bank National Trust Company concealed the fact that they were not a Federal Reserve Depository Bank. The purported lender claims to have accepted by negotiation the issuer Plaintiff's negotiable instrument as debtor in a deposit account; Defendant Deutsche Bank National Trust Company furthered their deception by purporting to have given consideration for an instrument Defendants' purport to Plaintiff's issued Negotiable Instrument in the form of real money purportedly executing an underlying obligation (indebtedness) between the parties to the purported contract. Defendant Deutsche Bank National Trust Company concealed in the presentation of the terms of the Mortgage contract(s) a cross acceptance of which Plaintiff, the issuer of the negotiable instrument would accept ownership of the real property collateral evidenced by the Warranty Deed for executing an accommodation negotiable instrument and pledged security agreement on behalf of Deutsche Bank National Trust Company, the Accommodated party for the purpose of a material variation to the purported contract in which Plaintiff would be acting as a *Guarantor* for Deutsche Bank National Trust Company, the Accommodated party to use Plaintiff's accommodation party's promise to put the accommodated into funds as surety and a personal property security interest in Plaintiff's pledged security instrument as collateral to secure their account debtor status for the purpose of a §1031 – Exchange (table funded) transaction for a service release premium shortly after the closing of the purported loan. Defendant Deutsche Bank National Trust Company concealed a third-party Sponsor Bank warehouse lender as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, the true character of the purported loan in this way had a materially negative effect on Plaintiff that was known by Defendant Deutsche Bank National Trust Company but not disclosed.

55.  Defendant Deutsche Bank National Trust Company knew or should have known that there was no meeting of the minds between the Plaintiff and the Originator Deutsche Bank National Trust Company regarding the true capacity of the parties and material facts of the purported loan and that most importantly, it created no indebtedness underlying obligation between the Defendants and other parties to the § 1031 – Exchange.

56.  Defendant Deutsche Bank National Trust Company knew or should have known that had the truth been disclosed, Plaintiff would not have pledged a security agreement to Deutsche Bank National Trust Company the Accommodated Party for the purpose of an alternate means of collection.

57.  Defendant Deutsche Bank National Trust Company intended to induce Plaintiff based on these material misrepresentations and improper disclosures.

58.  Plaintiff's reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendant's true intentions and profits from the proposed purported loan. Plaintiff would have known that the actions of

Defendant Deutsche Bank National Trust Company would have an adverse effect on the value of Plaintiff's home by clouding the title.

59. Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter into the §1031 – Exchange purported loan and accept the Services as Accommodated Party herein.

60. Defendants were aware of the misrepresentations and profited from them.

61. As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

62. Defendant Deutsche Bank National Trust Company is guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff entitled to recover, in addition to actual damages, punitive damages to punish Defendant and to deter them from engaging in future misconduct.

### THIRD CAUSE OF ACTION
### FRAUD IN THE INDUCEMENT

63. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64. Defendants, intentionally misrepresented to Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

65. Defendants misrepresented that they are the "holder and owner" of the Tangible Note and the beneficiary of the Mortgage/Deed of Trust. However, this was not true and was a misrepresentation of material fact. Documents state that the Originator allegedly sold the mortgage loan instrument to HMLT-2007-2. Defendants are attempting to collect on an intangible debt obligation via the §1031 – Exchange to which they have no legal, equitable, or pecuniary interest relating to Plaintiff's Real Property. This type of conduct is outrageous. Defendants are fraudulently foreclosing on the Real Property which they have no monetary or pecuniary interest, and doing so with unclean hands.

66. Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter into the §1031 – Exchange and accept the Accommodated Services as alleged herein.

67. The material misrepresentations were made by Defendants with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiff to submit to the foreclosure on the Real Property as opposed to recovering from predecessors in the § 1031 – Exchange on the Payment Intangible Obligation.

68. Defendants were aware of the misrepresentations and profited from them.

69. As a direct and proximate result of the misrepresentations and concealment, Plaintiff was

damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

70. Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## FOURTH CAUSE OF ACTION
## UNCONSIONABLE CONTRACT

### (Against Defendant Deutsche Bank National Trust Company - HMLT 2007-2)

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72. The actions of Defendants as set forth herein, resulted in Plaintiff being forced, tricked, and mislead into parting with their property.

73. Generally, one must prove the following to bring a legally sufficient claim of Unconscionable Contract.

    a. Undue Influence;

    b. Duress;

    c. Unequal Bargaining Power;

    d. Unfair Surprise; and

    e. Limited Warranty

74. Defendant Deutsche Bank National Trust Company presented in the origination of the purported loan that specific criteria such as FICO score and other industry standard underwriting requirements must be met in order to qualify for a loan of money for the subject property from Deutsche Bank National Trust Company

75. Defendant Deutsche Bank National Trust Company presented in the origination of the purported loan that a preliminary signature on the Mortgage loan contract was required in order to "lock in" an interest rate regarding the terms of the purported loan.

76. Defendant Deutsche Bank National Trust Company failed to clarify in the terms of the Mortgage loan contract that Deutsche Bank National Trust Company the Originator on the contract was in fact acting solely in the capacity as Accommodated Party account debtor beneficiary for a purported loan of money. Deutsche Bank National Trust Company concealed they were financially benefitting by bargaining with a third party to acquire a service release premium via wire funds transfer in order to table fund the purported loan at the closing using a warehouse line of credit.

77. Defendant Deutsche Bank National Trust Company knew or should have known that through a consciousness of innocence Plaintiff was at a special disadvantage when attempting to grant an alternate means of collection via the Security Instrument real

property lien Mortgage to Deutsche Bank National Trust Company

78. It is clear that Defendant Deutsche Bank National Trust Company intended to exploit Plaintiff's special disadvantage and deny Plaintiff's superior rights to the subject property.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

### (Against Defendant Deutsche Bank National Trust Company/200

79. Plaintiff re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

80. The terms of the mortgage contract are clear.

81. Pursuant to paragraph 23 – Release, Defendant Deutsche Bank National Trust Company and specifically MERS, their electronic agent was obligated to satisfy, release and reconvey the beneficial security interest in Plaintiff's pledged Mortgage/Deed of Trust upon payment of all sums associated with the release premium to Deutsche Bank National Trust Company for Accommodated Party services rendered.

82. Defendant Deutsche Bank National Trust Company was paid in full for their Accommodated capacity to the Tangible Note and Mortgage/Deed of Trust when it sold and relinquished its interest in the Plaintiff's real property to Greenwich Capital Acceptance, Inc.

83. Defendant Deutsche Bank National Trust Company failed to satisfy, release and reconvey the security instrument, thus breaching the terms found in paragraph 23 of the Mortgage/Deed of Trust.

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

84. Plaintiff re-alleges and incorporate herein by reference all previous paragraphs as though fully set forth herein.

85. Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.

    a. Breach of full disclosure;

    b. Breach of good faith and fair dealing;

    c. Misuse of superior or influential position;

    d. Misuse of superior knowledge; and

    e. Failure to act in another's best interest

86. Defendant Deutsche Bank National Trust Company failed to disclose to Plaintiff that they were not the legitimate creditor but more accurately, were account debtor in the accommodated table funded 26 U.S. Code § 1031 – Exchange of property held for productive use or investment to HMLT 2007-2.

87. Defendant Deutsche Bank National Trust Company as beneficiary under the Mortgage having only an Accommodated personal property interest over the Real Property collateral failed to meet their fiduciary duty to satisfy, release and reconvey the Real Property Lien Deed of Trust and the beneficial security interest (personal property) therein after receiving payment for all sums represented as the service

release premium

88. After October 3, 2006, and unknown to Plaintiff, Defendant Deutsche Bank National Trust Company for payment rendered through a service release premium divested itself of their capacity under Accommodated Note but, did not comply with the covenants of the Mortgage/Deed of Trust specifically, Covenant 23 – Release.

89. Deutsche Bank National Trust Company's acting not in the best interest of the grantor of the Mortgage/Deed of Trust failed to adhere to their Fiduciary Duties. Defendant Deutsche Bank National Trust Company was to satisfy, release and reconvey the security instrument in order for Plaintiff to maintain clear and marketable title. As a result of its failure to comply with the Mortgage, Defendants caused a cloud on Plaintiff's superior claim to title. As a result, Plaintiff was harmed.

## SEVENTH CAUSE OF ACTION
## QUIET TITLE

90. All Defendants named herein claim an interest and estate in the property adverse to Plaintiff in that defendant asserts he is the owner of the note secured by the Mortgage/Deed of Trust to the property the subject of this suit.

91. All Defendants named herein claims an interest and estate in the Real Property adverse to Plaintiff in that Defendants' asserts to be the owner of Tangible Note secured by the Mortgage/Deed of Trust to the Real Property, the subject of this suit.

92. The claim of all Defendants are without any legal right whatsoever, and Defendants have no estate, title, lien or interest in or to the Real Property, or any part of the Real Property construed and hypothecated as "After Acquired Collateral" the Intangible Payment transferable record to the §1031 - Exchange.

93. The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff's title, and these claims constitute a cloud on Plaintiff's title to the Real Property.

94. Plaintiff, therefore, alleges, upon information and belief, that none of the parties to the §1031 - Exchange transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Real Property; and that all Defendants are stopped and precluded from asserting an unsecured claim against Plaintiff's Real Property Estate.

95. Plaintiff requests the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiff's title to the property; and

96. Plaintiff request the court award Plaintiff costs of this action, and such other relief as the court may deem proper.

## EIGHTH CAUSE OF ACTION
## SLANDER OF TITLE

97. Plaintiff re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein

98. Generally, one must prove the following to bring a legally sufficient claim of Slander of Title.

a. There was a communication to a third party of;

b. A false statement;

c. Derogatory to another's title;

d. With malice; and

e. Causing special damages

99. There are no UCC 1 Financial Statement(s) perfecting a personal property interest regarding the purported true sale(s) and conveyance of credit swaps in 26 U.S. Code §1031 – Exchange of transferable record Smart Note personal property (payment intangible) in accordance of local law of jurisdiction.

100. There are no UCC 1 Financial Statement(s) perfecting personal property interest in the Accommodated Mortgage/Deed of Trust contract enforcement rights with the Secretary of State's Office where the Real Property resides, giving constructive notice to the world of the true capacity of the purported parties in the §1031 – Exchange in performance of the securities of HMLT 2007-2. (See Asset Securitization Comptroller's Handbook Nov. 1997 http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/assetsec.pdf)

101. Such instruments remained unrecorded as "Secret Liens" within the collateral file and was never submitted for recordation to perfect Defendant's rights to the Accommodated status Tangible Note and pledged Mortgage/Deed of Trust lien and the right to enforce an alternate means of collection.

102. Equitable rights to the Payment Intangible in the§ 1031 – Exchange do not extend to a lien on Real Property in accordance with statutory law.

103. In withholding such facts have potentially committed a grave error Slander of Title causing special damage.

104. The act of recording the purported Sept. 21, 2012 Assignment of Deed of Trust into the Official Records of the Philadelphia County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.

105. The act of recording the purported May 28, 2014 Corrective Corporation Assignment of Deed of Trust into the Official Records of the Philadelphia County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.

## NINTH CAUSE OF ACTION
### DECLARATORY RELIEF

106. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding his respective rights and duties in the subject note(s) and security instrument.  Plaintiff requests a judicial determination of the rights, obligations and interest of the parties with regard to the subject property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the subject property.

108.    Plaintiff should be the equitable owner of the Subject Property. Plaintiff seeks to quiet title as of the date of the filing of this Complaint. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that the Defendants be declared to have no interest estate, right, title or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiff's rights.

## TENTH CAUSE OF ACTION
### VIOLATIONS OF THE TRUTH IN LENDING ACT - 15 U.S.C. § 1640

109.    Plaintiff incorporates and realleges all of the allegations set forth in Paragraphs 1 through 114 as if fully set forth herein.

110.    Defendants were required to disclose the assignment or transfer of the Note and DOT each and every time that they were assigned or transferred.

111.    The Defendants' failed to disclose the purported assignment and/or transfer of the Note.

112.    In addition, the purported transfer of the Promissory Note in Jan. 30, 2006 to Trust was a non-recorded event and was concealed by Defendants.

113.    The foregoing facts was concealed by Defendants and was not reasonably ascertainable until discovered by Plaintiff upon review of the January 25 2017, loan audit.

114.    In addition, while the recorded event may have been discoverable (although Plaintiff knows little if anything about real estate matters and his first language is Spanish), the non-disclosure of the purported assignments shows a pattern and practice of defendants to skirt the TILA requirements.

115.    The failure to make the required disclosures caused Plaintiff time and expenses associated with negotiating with the wrong party or parties associated with the loan.

116.    15 U.S.C. § 1640 entitles Plaintiff to an award of statutory damages, costs,

litigation expenses, and attorneys' fees (if Plaintiff retains an attorney) as a consequence of the Defendants' violations of TILA.

## COUNT X11:
### NATIONAL HOMEOWNER BILL OF RIGHTS ("HBOR")

117.     Plaintiff incorporates and realleges all of the allegations set forth in Paragraphs 1 through 122 as if fully set forth herein.

118.     At all times material hereto, OCWEN HOME LOAN SERVICING, INC.was/is a loan servicer and the Property was owner occupied by Plaintiff.

119.     OCWEN HOME LOAN SERVICING, INC.is a "large servicer" pursuant to HBOR.

120.     OCWEN HOME LOAN SERVICING, INC. violated California's HBOR in the following ways:

a.     Prior to initiating the latest non-judicial foreclosure proceedings, OCWEN HOME LOAN SERVICING, INC .failed to contact Plaintiff as required by HBOR.

b.     OCWEN HOME LOAN SERVICING, INC. failed to alert Plaintiff that she may request documentation demonstrating the PNC's authority to foreclose.

c.     OCWEN HOME LOAN SERVICING, INC.failed to provide post-Notice of Default outreach with regard to the loan modification process.

d.     Though requested by Plaintiff, OCWEN HOME LOAN SERVICING, INC.failed to provide a single point of contact as required by HBOR.

e.     OCWEN HOME LOAN SERVICING, INC. negligently mishandled the mortgage modification process thus causing preventing Plaintiff from completing the mortgage modification process before the foreclosure of Plaintiff's property.

121.     Plaintiff has suffered damages as a result of of Ocwen's violation of HBOR.

## COUNT X111
### CCPA

122.     Plaintiff incorporates and realleges all of the allegations set forth in Paragraphs 1

through 1- 127 as if fully set forth herein.

123.     Title 15 USC Chapter 41 § 1461(g) states:

(g) Notice of new creditor

In addition to other disclosures required by this subchapter, no later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including -

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of interest in the debt is recorded; and

(E) any other relevant information regarding the new creditor.

Plaintiffs are entitled to actual and statutory damages as a result of the Defendants violation of the Consumer Credit Protection Act.

124.     Defendants violated the CCPA by failing refusing to disclose the purported assignments/transfer of the Promissory Note and DOT.

## COUNT X1111

## VIOATION OF FEDERAL REGULATIONS, REGULATION X, , 12 C.F.R. § 1024.41 (b)(2)

## (i)(A)

125.     Plaintiff incorporates all of the allegations contained in Paragraphs 1 through 130 herein as if fully set forth herein.

126.     Code of Federal Regulations, Regulation X, 12 C.F.R. § 1024.41 (b)(2)(i)(A) requires that when a bank is made aware of a communication that can reasonably be deemed to be an application for loss mitigation, the servicer must promptly conduct a review to determine whether the communication represents a complete or an incomplete application. Re: X, 12 C.F.R. § expressly notes, "if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete." Reg. X, 12 C.F.R. § 1024.41 (b)(2)(i)(A).

127.       Defendants OCWEN HOME LOAN SERVICING, INC.&  Deutsche Bank did not conduct a review to determine whether the Plaintiff's submitted loan modification application represented a complete or an incomplete loan modification application.

128.       Reg. X, 12 C.F.R. § 1024.41(b)(1) requires that when a servicer deems the loss mitigation application to be incomplete, the servicer must act affirmatively to complete the application. The servicer must exercise "reasonable diligence" to obtain any documents and information it claims to require to complete the application.

129.       Reg. X, 12 C.F.R. § 1024.41(b)(1) expressly notes, "[A] complete loss mitigation application means an application in connection with which a servicer has received all of the information that the servicer requires from the borrower in evaluation applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Reg. X, 12 C.F.R. § 1024.41(b)(1).

130.       Defendants Ocwen and Deutsche Bank did not act affirmatively to complete the Plaintiff's loan modification application and did not exercise reasonable diligence to obtain any documents/information to complete the application.

131.       Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) requires (1) of the servicer determines that the application for loss mitigation is complete, it must send the borrower a notice acknowledging that the application is complete within five business days of receipt of the application, and (2) The servicer must provide a written notice to the borrower describing the documents and information needed to complete the application.

132.       Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) expressly notes:
Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incoOmplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the application date pursuant to paragraph (2)(ii) of this section.

133.       Defendant Ocwen and Deutsche Bank did not send the Plaintiff a notice acknowledging that his loan modification application was complete within five days of receipt of the application and did not provide a written notice to Plaintiff or Plaintiff's counsel describing

the documents and information needed to complete the application.

      134.      Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) requires the written notice outlined in Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) must include a reasonable date from the Bank by which the homeowner should submit the missing documents and information. Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) expressly notes, "[T]he notice required pursuant to paragraph (b)(2)(i)(B) of this section must include a reasonable date by which the borrower submit the documents and information necessary to make the loss mitigation application complete."

      135.      Defendants OCWEN HOME LOAN SERVICING, INC. did not (1) provide the written notice outlined in Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B), and (2) did not provide a reasonable date from the Bank by which the borrower should submit the missing documents and information.

      136.      As a result of the aforementioned conduct, Defendant OCWEN HOME LOAN SERVICING, INC. is in violation of the Code of Federal Regulations , including but not limited to, Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(A); Reg. X, 12 C.F.R. § 1024.41(b)(1); Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B); Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii), and is attempting to foreclose on the Plaintiff's property without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiff from the type of abusive, deceptive, and unfair conduct in which Defendant engaged. Defendant's unlawful conduct has caused Plaintiff's damages in an amount to be proven at trial. Defendants U.S. Bank as Trustees of their respective securitized trusts are liable for the actions

of the servicer because it is within the scope of said agency relationship.

## COUNT 15

### DAMAGES FOR DEATH OF LILABEN J. BRAHNBHATT

      137.      Plaintiff incorporates all of the allegations contained in Paragraphs 1 through 142 herein as if fully set forth herein.

      138.      Plaintiff's seeks damages for emotional distress, pain and suffering, for the loss of their mother, Lilaben J. Brahnbhatt as a result of the fire at 604 Avon St., Philadelphia, Pa. which took place June 12, 2015. The death was the direct result of 2nd, 3rd degree burns from the

fire. Her death was on July 22, 2015. Medical records are included in Exhibit D.

139.　　Plaintiff's seek monetary damages of $1,000,000 as a result of the death.

## PRAYER

WHEREFORE PREMISES CONSIDERED as Prayer for Relief, and for the foregoing reasons, Plaintiff pray that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiff be awarded judgment:

•　　Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell the subject properties;

•　　Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject properties in Plaintiff and against Defendants and all claiming by, through or under them;

•　　A refund of any wrongfully or improperly collected fees and payments to Defendants to which it had no right;

•　　Pre- and post-judgment interest at the maximum rate allowed by law;

•　　Attorney's fees;

•　　Monetary relief over $100,000 but not more than $2,000,000.00; and

•　　Such other and further relief at law and/or in equity to which Plaintiff may be justly entitled including but not limited to damages within the jurisdictional limits of this

Court, together with pre-judgment and post-judgment interest as are allowed by law.

Dated: 31st January, 2017.


Anil J. Brahmbhatt, Pro per　　　　　　　　　　Usha A. Brahmbhatt, Pro per
802 Red Lion Road,　　　　　　　　　　　　　　802 Red Lion Road,
Philadelphia, PA 19115　　　　　　　　　　　　Philadelphia, PA 19115


## VERIFICATION

I, Anil J. Brahmbhatt, Usha A. Brahmbhatt, Pro per, am the Plaintiff in the above entitled matter and have personal knowledge to testify to the matters stated therein. I have read the facts and allegations and declare under penalty of perjury in and for the State of Pennsylvania that the above is true and correct to the best of my knowledge.

## VERIFICATION

I, Anil J. Brahmbhatt, Usha A. Brahmbhatt, Pro per, am the Plaintiff in the above entitled matter and have personal knowledge to testify to the matters stated therein. I have read the facts and allegations and declare under penalty of perjury in and for the State of Pennsylvania that the above is true and correct to the best of my knowledge.

Anil J. Brahmbhatt, Pro per
802 Red Lion Road,
Philadelphia, PA 19115

Usha A. Brahmbhatt, Pro per
802 Red Lion Road,
Philadelphia, PA 19115

Home: (215) 673-3767
Cellular: (267) 241-2628
E-mail: Anilbrahmbhatt1844@yahoo.com

On the __3__ day of __Febeuary__, 2017, Anil J. Brahmbhatt, and Usha A. Brahmbhatt, known to me appeared before me and executed the above document.

NOTARY PUBLIC

My Commission expires on __Oct 26, 2017__

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Viktor Soroka, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires October 26, 2017

# NOTARIZED AFFIDAVIT
## TO DECLARE IMPORTANT KEY INFORMATION
## ABOUT FORECLOSED SUBJECT REAL ESTATE PROPERTY:
## 604 AVON STREET, PHILADELPHIA, PA 19116 (USA)

We, the undersigned: MR. ANIL J. BRAHMBHATT, (the "Principal Borrower"), and MRS. USHA A. BRAHMBHATT (the "Co-Borrower) herein called as individuals, who are hereby solemnly declaring under oath before: Notary Public _Victor Soroisa_____, all details listed as follows that:

### (A) PERSONAL INFORMATION OF MR. ANIL J. BRAHMBHATT

1. My full name is: MR. ANIL JASHVANTLAL BRAHMBHATT – (Principal Borrower)
2. At present, my current residential address is as shown below:
   802 RED LION ROAD, PHILADELPHIA, PA 19115 (United States of America)
3. For contact purpose, my Home Telephone Number is: (215) 673-3767 and Cellular Telephone Number is: (267) 241-2628.
4. My Date of Birth is: JANUARY 17, 1959, and my Current Age is: 58 years.
5. My Place of Birth is: PADRA, District: Vadodara, Gujarat State, INDIA.
6. At present, I am a Citizen of United States of America, due to Naturalization.
7. At present, I am a resident of State of Pennsylvania since the month: July-1984.
8. On or about the date: July 30, 2008, I was became unemployed due to lack of work after about 22 years of total work history. During this period I had worked as Senior Accountant and my yearly salary was about $52,000. Suddenly, losing my full time job was a very big loss for me and my entire family members.
9. Then after again I was became unemployed due to disability since the date: On or about February 9th, 2012. At that time, I was became suddenly very sick due to Deficiency of vitamin B12 in my entire body. Because of that I was became a patient of some health problems and was under doctor's treatment for long time.

   At present, still I am unemployed due to my long term disability and receiving Social Security Disability Benefits since the date: January 1, 2013, each month. Still, I am under continued doctor's treatment for ongoing health problems, such as: (a) Anemia; (b) Diabetes Type 2, (c) Hypertension and/ or High Blood Pressure, (d) Heavy heart bits during certain activities, such as walking on high hill area, long time walking on streets, heavy lifting, going up and down more frequently on stairways, etc. (e) Deficiency of Vitamin B12 and Iron, (f) Very poor

eye sight particularly during evening and night time, (g) Memory Loss, (h) Very sever burning, freezing, pin punching continued pain in my both legs; from knee to toes every single day from about 5.00pm to 3.00am early in the morning. During this time I am not able to get any sleep at all, (i) Writing problem with slow speed and vibration in my right hand, (j) Atexia, (k) Polyneuropathy, (l) Nerve problem, etc. and more.

## (B) PERSONAL INFORMATION OF MRS. USHA A. BRAHMBHATT

1. My wife's full name is: MRS. USHA A. BRAHMBHATT, who is a: Co-Borrower.
2. At present, her current residential address is same as mine, shown below: 802 RED LION ROAD, PHILADELPHIA, PA 19115 (United States of America)
3. For her contact purpose, Home Telephone Number is: (215) 673-3767 and Cellular Telephone Number, you may use for her is mine: (267) 241-2628.
4. Her Date of Birth is: FEBRUARY 13, 1962, and her Current Age is: 54 years.
5. Her Place of Birth is: KALOL, District: Mehsana, Gujarat State, INDIA.
6. At present, she is a Citizen of United States of America, due to Naturalization.
7. At present, she is a resident of State of Pennsylvania since the month: Aug-1985.
8. At present, she is employed by Cintas Corporation, 10080 Sandmeyer Lane, PHILADELPHIA, PA 19116, on full time basis as a: Production Worker since the date: September 30, 2001 and she has excellent work history since last 15 years.
9. At present, my wife is also Housewife and performing her all daily routine activities before and after her working hours as well as helping me by performing my some of the responsibilities on behalf of me because of my continued ongoing long term disability.

## (C) IMPORTANT KEY INFORMATION OF FORECLOSED PROPERTY

1. Initially foreclosed property 604 AVON STREET, PHILADELPHIA, PA 19116 (USA) was bought by MY SELF, MY WIFE and MY YOUNGER SISTER in joint name on or about the date: September 15, 1988. Later on, during refinance process my sister's name was removed from the record due to personal reasons.
2. According to my personal knowledge and belief, always I was making monthly mortgage payments on or before the due date 15th of each month.
3. As mentioned above earlier, under Line number: (A) – 8, even though I had lost my full time job and was experiencing very difficult financial situation still I had made my home mortgage payments on or before due date 15th of each month

during the period: From July-2008 to January-2012. Because at that time I was collecting unemployment compensation during the period: From August 1, 2008 to June 26, 2010. It is true that during the period: From July-2010 to January-2012, still I had maintained my trend of making on time mortgage payments even though I had no source of income except my wife's wages only.

4. Then after, as mentioned above earlier, under Line number: (A) – 9, I was became unemployed again due to my sudden health problems and disability. At that time I had no source of income at all except my wife's income from her full time job during the period: From February-2012 to December-2012. It is true that later on from effective date of: January-2013 and onward I was become eligible to receive my Social Security Disability benefits after waiting period of 5 months.

5. However, still my financial condition was not improving well enough as needed. Because most of times I was not receiving monthly rent payment from my both parents, (mother, father and younger sister), who were residing in the subject property at that time. So, still I was experiencing difficult financial situation and I was not able to make monthly mortgage payment to my mortgage company as well as other creditors after the month of February-2012 and onward.

6. As explained above, it is true that starting the month of: FEBRUARY-2012, I was not able to make my any monthly mortgage payments at that time to my mortgage company: OCWEN LOAN SERVICING, LLC. and I was becoming more and more delinquent each month.

7. My financial situation was becoming very much worst day by day at that time. So, I had contacted to BANKRUPTCY ATTORNEY for legal advice in the month of December-2012. According to opinion given by the said attorney, I had decided to file BANKRUPTCY PETITION JOINTLY under my name and my wife's name under CHAPTER 7, to get benefit of FRESH START, FIRST TIME IN A LIFE.

8. On the date: December 20, 2012, my Bankruptcy Attorney had filed the said petition in the U.S. Bankruptcy Court, Eastern District of Pennsylvania State in Philadelphia City. Later on, on the date: April 26, 2013, our joint debt was discharged by the court and the judge had issued a DISCHARGE ORDER to us.

9. Later on, as far as I know and believe that sometime in the year 2014, my mortgage company: Ocwen Loan Servicing, LLC. had started to take legal action against myself and my wife to take away physical possession of the subject real estate property: 604 Avon Street, Philadelphia, PA 19116 from us and foreclose it. At that time, I had informed them very well about my continued financial situation and tried to convince them to give me some extra time to make past due payments very soon. But they were not ready to listen me any way at all.

10.     It is true that my mortgage company: OCWEN was aware of my disability problem, but never reached out to offer me a loan modification informing us that 604 Avon Street, Philadelphia, PA 19116 is our SECOND, Investment Property and Not a Primary Residence, even though our family members living there.

11.     Accordingly, now first before foreclosure we are seeking a loan modification and then order to set aside to do foreclosure. But, now we believe it is too late.

12.     When OCWEN had sent us a Notice of Scheduled Property Foreclosure (Sheriff Sale) Date of May 5, 2015, at that time we had filed a motion to postpone foreclosure process, but it was denied by the court. Also, prior to day before scheduled Sheriff Sale date myself and my wife, we both had visited in person at the office of OCWEN's attorney: Mr. Steven K. Eisenberg in Warrington, PA to talk with him. We had tried very well to convince him about our worst financial situation and to stop foreclosure process, but our all efforts were helpless with his one word: SORRY!!!

13.     On the day Tuesday, May 5th, 2015, of SHERIFF SALE, myself (Principal Borrower) was personally present there at that time and location to see that who is buying my house in auction? When my house's turn came for auction, at that time an auctioneer had clearly announced with property's book/writ number: 1505-490 that, Is there any buyer for 604 Avon Street, Philadelphia, PA 19116 property with opening biding price of $15, 100? But, there was NO BUYER/ NO RESPONSE at all. So, auctioneer had sold back the said house back to the bank of mortgage company for the opening bid price of $15,100 only. Then, I was become very upset, fell down on the floor and cried too much.

14.     On the day Friday, June 12, 2015, there was an accidental house fire in the subject foreclosed property wherein my both parents age of 77 years old and younger sister age of 45 years old (divorced and mother of two minor sons) were residing. My father was able to come out safe with the help of strange person who was passing nearby property at that time. But, very unfortunately my younger sister: NAYNA BRAHMBHATT was passed away on the same day in 2nd floor bathroom due to smoking inhalation.

15.     Then 40 days after on Wednesday, July 22, 2015, my mother: LILABEN J. BRAHMBHATT was also passed away who was suffering from 2nd and 3rd degree burns. She was under treatment at Temple University Hospital's Burn Center in downtown Philadelphia, PA.

16.     Now, Ocwen Loan Servicing, LLC. and/ or their bank has renovated the said foreclosed property after getting back possession of our house from us and good money from our home owner's insurance company. At present, property

is on sale with a PENDING STATUS, for asking price of $169,600, to make net profit in the amount of $145,500 more or less ($169,600 - $15,100).

17.　　On the date: August 26, 2011, there was a water damage in the ceiling of living room of the subject property. At that time we had submitted water damage claim to my Home Owner's Insurance Company and we had received a check in the amount of $6,195.11 from them as a settlement in the names of myself, my wife and mortgage company: Ocwen Loan Servicing. At that time, we had sent the said check to Ocwen for endorsement purpose before we can deposit it in our bank account. Now, so far Ocwen has never returned the said check back to us after endorsement on it. But, after keeping it in our escrow account, very boldly and gladly they have eaten the amount of entire check by never returning it back to us. So, now we are entitled to receive back money of the said check's amount $6,195.11, because now property has been renovated completely. So, now Ocwen Loan Servicing, LLC must give back that owed money to us.

18.　　On the base of all above provided detailed information and Mortgage Securitization Audit Report obtained from Certified Forensic Loan Auditors, it clearly shows that OCWEN LOAN SERVICING, LLC. and/ or their bank have committed various violations. Also, it is true that OCWEN LOAN SERVICING, LLC is only a DEBT COLLECTOR COMPANY, BUT NOT A MORTGAGE NOTE HOLDER.

19.　　However, OCWEN has taken away physical possession of our house through Foreclosure. Also, in addition to that we have lost our two very important family members in an unfortunate tragedy as informed earlier. Because of their sudden death during very short period of time within about six weeks, we had to spent money for their funeral process arrangements. Also we had to go to INDIA after getting passports and visa with our all family members to dispose their Remains/ Ashes during period: From November 24, 2015 to Dec. 18, 2015.

20.　　So, it clearly shows that from the month: February-2012 until now for very long time, myself and my wife, we both have suffered all kinds of stress, damages, such as: Emotionally, Physically and Financially too because of losing our house in forcible foreclosure. So, we must be entitled to collect all kinds of damages in a form of appropriate monetary awards from OCWEN LOAN SERVICEING, LLC. and/ or all other involved responsible defendants too.

## Page 6 of 6

21.     During the foreclosure defense litigation process, we have spent money to receive Mortgage Securitization Audit Report from Certified Forensic Loan Auditors in the amount of $1,995 and also have paid attorney's fee too. So, we should also be entitled to receive back all spent money from our home mortgage company: Ocwen Loan Servicing, LLC. and/ or all other defendants.


What is stated above is all true and correct to our personal knowledge and belief. Also, we know that to make a false affidavit is a criminal offense.


Date: February 9th, 2017

Place: Philadelphia, Pennsylvania (USA)


(Signature of: MR. ANIL J. BRAHMBHATT – Principal Borrower)


(Signature of: MRS. USHA A. BRAHMBHATT – Co-Borrower)


02/09/2017

(Seal and Signature of Notary Public)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Viktor Soroka, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires October 26, 2017